**NU–LIFE CONSTRUCTION CORP. and Terminate Control Corp., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the CITY OF NEW YORK, Division of School Buildings of the Board of Education of the City of New York, Stuart Horowitz, Stanley Dobrowolski, John Trapanotto, John J. Manfredi, John Frisone, Nicholas E. Borg, and Does 1 through 20, Defendants.**

No. 86 CV 0807 (ADS).

United States District Court,
E.D. New York.

Dec. 2, 1991.

Kantrowitz & Goldhamer, P.C., Chestnut Ridge, N.Y. (Gary S. Graifman, of counsel), for plaintiffs Nu-Life Const. Corp. and Terminate Control Corp.

O. Peter Sherwood, Corp. Counsel of City of New York, New York City (John P. Woods, James Joyce, Susan J. Finkenberg, Asst. Corp. Counsel, of counsel), for defendant Board of Educ. of City of New York.

Peltz, Walker & Dubinsky, New York City (Eliot R. Clauss, of counsel), for defendant John Trapanotto.

Irving Cohen, New York City, for defendant John J. Manfredi.

Stanley Dobrowolski, pro se.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

Despite the explosion of civil RICO litigation in recent years, the issue before the Court at this time has not yet been squarely addressed by the Second Circuit: Is a municipal corporation subject to civil liability under RICO based on an alleged pattern of racketeering activity and underlying predicate acts allegedly committed by its agents or employees?

## PRELIMINARY STATEMENT

This is an action brought by the plaintiffs Nu-Life Construction Corp. ("Nu-Life") and Terminate Control Corp. ("Terminate"), pursuant to the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, against the defendants Board of Education of the City of New York ("Board"), the Division of School Buildings of the Board ("DSB"), and various individual employees of each.

Presently before the Court is the motion of the Board and the DSB, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the RICO claims contained in the second amended complaint for failure to state a claim upon which relief may be granted. This Court has twice before denied similar motions to dismiss brought on by the Board and the DSB. However, in light of recent appellate authority outside this Circuit, the Board and the DSB renew that motion and seek reconsideration of the Court's prior rulings.

For the reasons set forth below, the motion of the Board and the DSB is granted, and the RICO claims set forth in the second amended complaint are dismissed as against these defendants.

## FACTUAL BACKGROUND

Since this motion is made pursuant to Fed.R.Civ.P. 12(b)(6), the allegations of the second amended complaint are accepted as true (see Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1098 [2d Cir.1988], cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]), and, in order to prevail, the defendants must demonstrate that under no interpretation of the facts alleged can the plaintiffs succeed (see Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 [1957]).

With these well-settled principles in mind, the Court turns to the allegations set forth in the second amended complaint. Although the question presented is purely one of law, an overview of the basic allegations is warranted.

During the years 1984 and 1985, Nu–Life and Terminate were each awarded contracts by the Board, through the DSB, for work in various public school facilities in New York City. Nu–Life received construction and maintenance contracts, and Terminate was awarded extermination and pestcontrol contracts. Each of the plaintiffs proceeded to perform under these contracts.

Both Nu–Life and Terminate allege that the Board and the DSB, through their respective agents and/or employees, repeatedly demanded that Nu–Life and Terminate pay illegal "kick-backs" in order to retain their contracts. The plaintiffs refused to make the demanded kick-back payments, and, as a result of their refusals, the Board and the DSB thereafter allegedly took retaliatory actions against them. Specifically, the plaintiffs allege that the

Board and the DSB withheld payments and made complaints about the quality of the work performed by the plaintiffs.

Both Nu–Life and Terminate brought actions in state court alleging, *inter alia*, breach of contract and tortious interference. These actions are currently pending in New York State Supreme Court, Kings County. In fact, Justice Aaron D. Bernstein recently denied the defendants' motion for summary judgment in the Nu–Life action (*see Nu–Life Construction Corp. v. Board of Ed. of the City of N.Y.*, N.Y.L.J., Oct. 3, 1991, p. 25, col. 5 [Sup.Ct. Kings County 1991]).

Nu–Life and Terminate also commenced this civil RICO action, alleging conspiracy to violate RICO as well as violations of RICO's substantive provisions (*see* 18 U.S.C. §§ 1962[c] & [d]).

The Board and the DSB now move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the RICO claims contained in the second amended complaint, on the ground that they, as municipal entities, are not subject to liability under the civil RICO statute. The remaining defendants take no position on the motion.

## DISCUSSION

### I.

■ Although the Second Circuit has not been presented with the issue, the parties contend that the decision in *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), suggests the appropriate course of action for the resolution of the issue. Not surprisingly, the parties differ as to the result that should be reached. Accordingly, at the outset, a brief review of the *Cullen v. Margiotta* litigation is warranted.

In *Cullen*, the Second Circuit vacated the district court judgment that dismissed the civil RICO claims against the Town of Hempstead, the Town of Hempstead Republican Committee and the Nassau County Republican Committee. In dismissing the RICO claims after trial, the district court found that the jury " 'concluded that the plaintiffs failed to establish that any one of these defendants was an entity associated with an enterprise which through a pattern of illegal activity, participated in the conduct of the enterprise's affairs' " (*Cullen v. Margiotta, supra*, 811 F.2d at pp. 728–29, *quoting Cullen v. Margiotta*, No. 76 CV 2247, slip op. at pp. 12–13 [E.D.N.Y. Dec. 27, 1985] [Mishler, J.]).

On appeal, however, the Second Circuit held that the district court had failed to submit to the jury an interrogatory required for a complete answer to the ultimate question of liability (*Cullen v. Margiotta, supra*, 811 F.2d at p. 730). Moreover, the Second Circuit held that in the absence of such an interrogatory submitted to the jury, pursuant to Fed.R.Civ.P. 49(a), the district court should have itself made a finding (*id.*).

Accordingly, the Second Circuit remanded for "factual findings as to whether plaintiffs proved, by a preponderance of the evidence ... that the Town, or the Town Committee, or the County Committee participated, through the illegal racketeering activity found by the jury in the affairs of the RICO enterprise found by the jury, or ... whether plaintiff's trial evidence established any other civil RICO claim" (*id.* at pp. 731–32).

On remand to the district court, Judge Jacob Mishler entered a judgment finding that the defendant Committees had in fact violated RICO (*Cullen v. Margiotta*, No. 76 CV 2247, slip op. at p. 23 [E.D.N.Y. Aug. 31, 1987] [Mishler, J.]). However, Judge Mishler granted the Town of Hempstead's motion to dismiss the RICO claims, on the ground that the Town could not be held criminally liable, as a matter of law, for the alleged violations of the Hobbs Act that formed the basis of the predicate acts giving rise to liability under RICO (*Cullen v. Margiotta, supra*, slip op. at p. 11).

The *Cullen* litigation again came before the Second Circuit in *Jund v. Town of Hempstead*, 941 F.2d 1271 (2d Cir.1991). In *Jund*, the district court's dismissal on remand was not before the court, but the Second Circuit, in reciting the procedural history of the litigation, noted that the dis-

trict court had found that the Committees had violated RICO, "but that the Town could not have done so" (*Jund v. Town of Hempstead, supra,* 941 F.2d at p. 1276).

With these decisions in mind, the plaintiffs argue that the Second Circuit in *Cullen* "assumed" that municipal liability exists under civil RICO when it remanded for factual findings as to the Town. On the other hand, the Board and the DSB argue that the Second Circuit's recitation in *Jund* of the district court's dismissal on remand represents implicit approval of Judge Mishler's order. This Court disagrees with both of these strained interpretations, and is of the view that the Second Circuit has neither been fully presented with, nor has it ruled on, the issue of municipal liability under civil RICO.

## II.

This analysis must necessarily begin with the plain language of the statute itself. Liability under civil RICO may be imposed upon any "person" (18 U.S.C. § 1962), which broadly defined as "any individual or entity capable of holding a legal or beneficial interest in property" (18 U.S.C. § 1961[3]). Clearly, since a municipal corporation is capable of holding an interest in property, it is beyond dispute that such an entity is a "person" within the meaning of RICO (*see Cullen v. Margiotta, supra,* slip op. at p. 7; *see also In re Citisource Sec. Litig.,* 694 F.Supp. 1069, 1079 [S.D.N.Y.1988]). Accordingly, the Court finds that both the Board and the DSB, as entities capable of holding interests in property, are "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

However, a finding that a municipal entity is a "person" within the meaning of 18 U.S.C. § 1961(3) is "only the first hurdle on the track leading to municipal liability under RICO" (*In re Citisource, supra,* 694 F.Supp. at p. 1079). In order to impose civil liability under RICO, the plaintiff must also establish that the defendants committed two or more predicate acts constituting a "pattern of racketeering activity" (*see* 18 U.S.C. § 1962; *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229,

237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 [1989] ).

In the instant case, to prove the alleged predicate violations of the Hobbs Act, 18 U.S.C. §§ 1951–55, the plaintiffs bear the burden of showing that the defendants possessed the required intent or *mens rea* (*see In re Citisource, supra,* 694 F.Supp. at p. 1079; *Cullen v. Margiotta, supra,* slip op. at p. 7). Establishing this required intent is "the Achilles' heel of the plaintiff seeking to impose RICO liability upon a municipal corporation" (*In re Citisource, supra,* 694 F.Supp. at p. 1079), because a municipal entity is "incapable of forming the criminal intent necessary to support the alleged predicate offenses" (*id.; see also Cullen v. Margiotta, supra,* slip op. at pp. 7–8; *O & K Trojan v. Municipal Contractors & Equipment,* 751 F.Supp. 431, 434 [S.D.N.Y.1990] ).

The criminal intent of municipal agents cannot be imputed to the municipality itself by reason of *respondeat superior* (*In re Citisource, supra,* 694 F.Supp. at p. 1080; *Cullen v. Margiotta, supra,* slip op. at pp. 9–10). Since a municipality cannot be held liable under the doctrine of *respondeat superior* for the commission of the underlying predicate acts by its agents, it follows that the municipality likewise cannot be liable under *respondeat superior* for a violation of RICO that is predicated upon those acts (*see In re Citisource, supra,* 694 F.Supp. at p. 1080).

Although the Second Circuit has not addressed the issue presented here, several district court decisions within this Circuit, in addition to Judge Mishler's persuasive decision in *Cullen,* have specifically found that a municipal entity cannot be held liable under civil RICO as a matter of law (*see, e.g., O & K Trojan, supra,* 751 F.Supp. at p. 434 [municipality incapable of forming criminal intent to commit predicate offense of fraud]; *North Star Contracting v. Long Island R.R.,* 723 F.Supp. 902, 908 [E.D.N.Y.1989] [public benefit corporation, Long Island Railroad, like municipal corporations, is incapable of forming criminal intent to commit predicate acts, and cannot be held liable under RICO]; *In re Citi-*

*source, supra,* 694 F.Supp. at pp. 1079–80 [City of New York cannot form criminal intent to commit predicate acts, thus cannot be held liable under civil RICO]). In addition, several district courts outside this Circuit have held that municipalities may not be held liable under civil RICO (*see, e.g., Bonsall Village, Inc. v. Patterson,* No. CV–90–0457, slip op. [E.D.Pa. Sept. 19, 1990] [1990 WL 139383, at pp. *4–*6, 1990 U.S.Dist. LEXIS 12530, at pp. *13–*18]; *Albanese v. City Federal Savings and Loan Ass'n,* 710 F.Supp. 563, 568–69 [D.N.J.1989]). This Court agrees with the reasoning of those cases.

■ Accordingly, the Court holds that, although the Board and the DSB are "persons" within the meaning of 18 U.S.C. § 1961(3), they are not capable of forming the criminal intent necessary for the commission of the predicate violations of the Hobbs Act, and therefore cannot be held liable under 18 U.S.C. § 1964(c).

Recent appellate authority outside this Circuit also supports this result. In *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 404 (9th Cir.1991), the Ninth Circuit held that civil RICO claims against a public hospital district were properly dismissed since "government entities are incapable of forming a malicious intent". Moreover, the Ninth Circuit noted that, as a matter of public policy, liability cannot be imposed upon the "body politic by appeals to the doctrine of *respondeat superior* or to principles of agency ... [because] public policy is offended if all the citizens of a state are made liable for extraordinary damages as a result of the actions of a few dishonest officials" (*id.* at p. 404).

In *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 910 (3d Cir.1991), the Third Circuit did not reach the issue of whether a municipal corporation is capable of forming criminal intent to commit predicate acts, but nonetheless held that a municipality cannot be held liable under civil RICO because the treble damages mandated by 18 U.S.C. § 1964(c) are "punitive" in nature, and therefore cannot be imposed upon municipalities which have historically been immune from exemplary damages.

By reason of this determination, the Court need not reach the issue of whether the treble damage provision of civil RICO precludes imposition of liability upon a municipal entity but merely notes, however, that while there is some authority for the proposition that civil RICO's treble damages are *per se* punitive (*see, e.g., Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,* 720 F.Supp. 805, 810 [N.D.Cal. 1989]), the courts are apparently divided as to whether the treble damages are "remedial", "punitive", or both in nature (*see* D. Smith & T. Reed, *Civil RICO* ¶ 10.04 [1990] [collecting cases]). Moreover, the Supreme Court has indicated in *dicta* that the treble damages available in a civil RICO action are primarily "remedial", and are only secondarily "punitive" (*see Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 240–41, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185 [1987]).

Therefore, this Court holds only that a municipal entity, while a "person" within the meaning of 18 U.S.C. § 1961(3), is incapable of forming the criminal intent necessary to establish the underlying predicate offenses under the Hobbs Act, and therefore may not be held civilly liable under RICO, 18 U.S.C. § 1964(c).

Finally, the Court notes that this conclusion is not inconsistent with *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295 (2d Cir.1990), where the Second Circuit found that a public utility is a "person" within the meaning of 18 U.S.C. 1961(3), since it is capable of holding an interest in property (*County of Suffolk, supra,* 907 F.2d at p. 1308). The Second Circuit did not, however, address the issue of whether the public utility could form the necessary *mens rea* to commit the predicate acts.

## CONCLUSION

For the reasons set forth above, pursuant to Fed.R.Civ.P. 12(b)(6), the motion of the Board of Education of the City of New York, and the Division of School Buildings of the Board to dismiss the RICO claims

contained in the second amended complaint as against them, is granted. Accordingly, the first, second, fourth, fifth, sixth, seventh, eighth and ninth causes of action contained in the second amended complaint are dismissed as against the Board of Education and the Division of School Buildings.

Although the RICO claims are dismissed as against these defendants, the Court notes that the tenth cause of action contained in the second amended complaint alleges negligent hiring and negligent supervision by these defendants, which cause of action has not been challenged on this motion. Accordingly, at this juncture, the plaintiffs may proceed against the Board and the DSB on the tenth cause of action.

SO ORDERED.