**Thomas RINI, Diane O'Donnell, Richard E. Ryan, Edward Winrow, Barbara Laumenede, Lawrence Ragona, John Infranca, Helen Delaney Harris, John Ciborowski, Vincent Anthony, Rhoda Becker, Giacomo Ciccone, and Charles J. O'Connor, Plaintiffs,**

v.

**Benjamin L. ZWIRN, in his individual capacity and as Supervisor of the Town of North Hempstead, May Newburger, Anthony D'Urso, Barbara Johnson, in their individual capacities, and as council members of the Town of North Hempstead, Gerard Cunningham, in his capacity as council member of the Town of North Hempstead Board, Richard Middlemark, in his individual capacity, and as Executive Assistant to the Supervisor of the Town of North Hempstead, the Town of North Hempstead, Paul Nehrich, individually and as President of the Town of North Hempstead Civil Service Employees Association, William Biamonte, in his individual capacity, and as**

Director of Legislative Affairs, Lawrence Nedelka, in his individual capacity and as Commissioner of Finance, Friends of Ben Zwirn and Alice Peckelis, in her capacity as Treasurer of Friends of Ben Zwirn, Defendants.

No. CV 93–2968 (MLO).

United States District Court,
E.D. New York.

May 5, 1995.

Vessa & Wilensky, by Michael P. Vessa, Mineola, NY, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison by Gerald C. Harper and Jeh C. Johnson, New York City, for defendants Benjamin L. Zwirn, May W. Newburger, Anthony D'Urso, Barbara Johnson, Gerard Cunningham, Richard Middlemark, William Biamonte, Lawrence Nedelka, and the Town of North Hempstead.

Ivan Kline, Town Atty., Town of North Hempstead, Manhasset, NY and Nancy E. Hoffman, Albany, NY, for Paul Nehrich, as President of the Town of North Hempstead Civ. Service Employees Ass'n.

Gaba & Stober, P.C. by Richard M. Gaba and Louis D. Stober, Mineola, NY, for Paul Nehrich, individually.

Tedone & Tedone by Matthew A. Tedone, Albertson, NY, for Friends of Ben Zwirn.

Alice Peckelis, Port Washington, NY, pro se.

*MEMORANDUM OPINION AND ORDER*

ORENSTEIN, United States Magistrate Judge:

The plaintiffs in this action, former employees of the Town of North Hempstead, challenge the termination of their employment under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 1988, 18 U.S.C. § 1961 *et seq.* (Racketeer Influenced and Corrupt Organizations, hereinafter "RICO"), and common law fraud. Plaintiffs bring this action against the Town of North Hempstead, the former town supervisor, members of the Town Council, other former town officials, the president of the town Civil Service Employees Association and the town supervisor's political fund-raising organization and its treasurer. Plaintiffs assert that they were terminated from their positions as public employees solely on the basis of their political affiliation and in retaliation for their political activities. (Compl. ¶ 2.)

Defendants move to dismiss the Complaint. Fed.R.Civ.P. 12(b)(6), 12(c), and 9(b). Defendants Town of North Hempstead, Benjamin L. Zwirn, May Newburger, Anthony D'Urso, Gerard Cunningham, Richard Middlemark, William Biamonte, and Lawrence Nedelka (hereinafter collectively referred to as "Municipal" or "Town" defendants) move to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure (hereinafter "FRCP") 12(b)(6) or in the alternative pursuant to FRCP 9(b) for failure to plead allegations of fraud with particularity. Defendant Paul Nehrich as "President of the Town of North Hempstead Civil Service Employees Association" (hereinafter "CSEA") moves to dismiss all claims pursuant to FRCP 12(c). (CSEA Mem. of Law at 1.) Defendant "Friends of Ben Zwirn" also moves to dismiss pursuant to FRCP 12(c).[1]

*BACKGROUND*

Plaintiffs are former employees of the Town of North Hempstead who were dis-

---

1. Defendant *pro se* Alice Peckelis has not filed a formal motion to dismiss. However, the Court considers the motion on behalf of defendant "Friends of Ben Zwirn" as encompassing Peckelis as she is named in her capacity as an officer of that entity only, and not individually.

charged during the period of December 31, 1991 to April 10, 1992, although ten of the thirteen plaintiffs were discharged on December 31, 1991. (Compl. ¶¶ 5–17.) All plaintiffs are registered Republicans. (Compl. ¶¶ 2, 5–17.) All defendants, except Cunningham, are members of the Democratic Party. (Compl. ¶ 2.) Plaintiffs allege that defendants met secretly and targeted for termination, Town employees who were active in Republican politics or had family members who were active Republicans. (*Id.*) It is alleged that the targeted employees were pressured by the defendants to disavow their Republican affiliation in exchange for their jobs. (Compl. ¶ 47.) Plaintiffs claim that defendants' stated reasons and motive for the dismissals, that they were necessary due to a fiscal crisis and resulting budget cuts, are pretextual. (Compl. ¶¶ 48–50.)

Thomas Rini was Administrative Assistant to the Superintendent of Highways. (Compl. ¶ 5.) Diane O'Donnell was a Traffic Technician I. (Compl. ¶ 6.) Richard E. Ryan was also a Traffic Technician I. (Compl. ¶ 7.) Edward Winrow was Administrative Assistant to the Commissioner of Community Services. (Compl. ¶ 8.) Barbara Laumenede was a Payroll Supervisor. (Compl. ¶ 9.) Lawrence Ragona was a Laborer II. (Compl. ¶ 10.) John Infranca was a Recreation Aide. (Compl. ¶ 11.) Helen Delaney Harris was an Investigator Aide. (Compl. ¶ 12.) John Ciborowski was a Laborer I. (Compl. ¶ 13.) Vincent Anthony was Chief Research Assistant. (Compl. ¶ 14.) Rhoda Becker was Commissioner of Planning and Research Development of the Town of North Hempstead. (Compl. ¶ 15.) Giacomo Ciccone was a Labor Supervisor I. (Compl. ¶ 16.) Charles O'Connor was a Multiple Residence Inspector I. (Compl. ¶ 17.) Eight of the plaintiffs were elected members of the Nassau County Republican Committee. (Compl. ¶¶ 5–17.) Plaintiffs further allege that defendants knew these plaintiffs to be active Republicans. (Compl. ¶ 18.)

Benjamin L. Zwirn was Supervisor of the Town of North Hempstead, and a member of the Town Board; he is a Democrat. (Compl. ¶ 19.) May Newburger, Anthony D'Urso, and Barbara Johnson were Town Board members and are Democrats. (Compl. ¶¶ 20–22.) Gerard Cunningham was a Republican Town Board member. (Compl. ¶ 23.) Richard Middlemark was the Executive Assistant to the Supervisor. (Compl. ¶ 24.) Paul Nehrich is an employee of the Town of North Hempstead (Compl. ¶ 25), and is Unit President of the North Hempstead Unit of Local 830, Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL–CIO, which Unit on May 1, 1993, became part of Nassau County Municipal Employees Local 882 of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL–CIO. (Answer of Defendant Nehrich, Individually, at ¶ 26.) William Biamonte was Administrative Assistant to the Supervisor and Director of Legislative Affairs. (Compl. ¶ 26.) Lawrence Nedelka is Commissioner of Finance. (Compl. ¶ 27.) The Town of North Hempstead ("Town") is a municipal corporation according to the laws of the State of New York. (Compl. ¶ 28.) Friends of Ben Zwirn was and is an unincorporated political committee formed to promote the election of defendant Zwirn. (Compl. ¶ 29.) Alice Peckelis is Treasurer of Friends of Ben Zwirn. (Compl. ¶ 30.) Plaintiffs are suing all defendants in their official and individual capacities except Cunningham and Peckelis, who are being sued in their official capacities only. (Compl. ¶ 32.)

Plaintiffs allege that Zwirn and defendants Middlemark, Nedelka, and Biamonte created a budget for the Town as well as to

> engag[e] in a scheme and conspiracy to defraud the Town, as well as plaintiffs and other Republicans and the Nassau County Civil Service Commission through the use of implied extortion, strong-armed tactics and other threats and harassing measures for the purpose of demonstrating to Town employees who were members of the Republican Party that in the event they did not disavow their loyalties to the Republican Party and/or switch their registration from Republican to another, they would be terminated.

(Compl. ¶ 44.) Plaintiffs claim that defendants' true motivation in terminating them

was so that the defendants would be free to hire individuals associated with them or the Democratic Party and who contributed to them or the Democratic Party without regard to the competence of said individuals and without regard to the various Civil Service laws, regulations and other requirements for hiring of Town employees. (Compl. ¶ 45.) It is alleged that Zwirn "and/or his agents" told Republican employees at various Town forums that they would be terminated, as Zwirn did not intend to continue to employ individuals who had worked under the previous Republican Town administration. (Compl. ¶ 46.) Plaintiffs claim they had "implied knowledge ... that all active Republican Town employees were being targeted for termination." (Compl. ¶ 47.)

## DISCUSSION

■■■ On a motion to dismiss, the factual allegations of the complaint are accepted as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination,* — U.S. —, —, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bolt Electric v. City of New York,* 53 F.3d 465, 469 (1995); *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993), *cert. denied* — U.S. —, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). In addition, the court will draw all inferences in plaintiffs' favor. *Ferran,* 11 F.3d at 22. Thus defendants must demonstrate that plaintiffs' claims cannot succeed under any interpretation of the facts. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

The complaint seeks compensatory and punitive damages, attorney's fees, and injunctive relief against the defendants based upon violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and 42 U.S.C. §§ 1983, 1985(3) through violations of the plaintiff's First, Fourth, Fifth, and Ninth Amendment rights, and common-law fraud.

## I. SECTION 1983 CLAIMS

Plaintiffs' fourth and fifth causes of action allege violations of 42 U.S.C. § 1983 for the loss of their employment on the basis of their political affiliation. (Compl. ¶¶ 112, 120.) The fourth cause of action alleges violations of the First and Fourteenth Amendments; the fifth cause of action alleges violations of the Fourth, Fifth, and Ninth amendments. (Compl. ¶¶ 112, 120.) Each defendant moves to dismiss the § 1983 claims for failure to state a claim.

### A. MUNICIPAL DEFENDANTS' LEGISLATIVE IMMUNITY

Each Town Board member, including Zwirn, is named in their official and individual capacity except Cunningham, who is named only in his official capacity. The Complaint alleges that plaintiffs' employment was terminated by implementation of the 1992 Town budget. (Compl. ¶¶ 45, 49.) The Town Board members move to dismiss the complaint against them in all respects, asserting legislative immunity from suit. (Municipal Defendants' Memorandum of Law in Support of Motion to Dismiss, hereinafter "Mun.Defs.' Mem. of Law" at 21.)

■■■ The common-law doctrine of official immunity governs civil liability for public servants acting in their legislative capacity. *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (citing *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (recognizing legislative immunity of state legislators in § 1983 suits for both damage and equitable relief)); *see also Star Distributors, Ltd. v. Marino,* 613 F.2d 4, 6–7 (2d Cir.1980). Absolute legislative immunity has been extended to regional legislators. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979). A majority of circuit courts have held that local legislators are also entitled to legislative immunity, by finding no distinction between the policy of applying legislative immunity to state, regional or municipal legislators. *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 72 (2d

Cir.1992) (collecting cases). The Second Circuit concurs in this holding. *Orange Lake Assoc., Inc. v. Kirkpatrick,* 21 F.3d 1214, 1224 (2d Cir.1994) (Town Board members); *Goldberg,* 973 F.2d at 72–73 (dicta); *see also Orange v. County of Suffolk,* 830 F.Supp. 701, 704 (E.D.N.Y.1993) (applying legislative immunity to county executive and county legislators). This Court holds that the legislators of the Town of North Hempstead are entitled to legislative immunity for acts within the scope of their legislative authority. However, it is well settled that the municipal entity has no claim to § 1983 immunity. *See Ferran v. Town of Nassau,* 11 F.3d 21, 23 (2d Cir.1993) (citing *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) and *Goldberg v. Town of Rocky Hill,* 973 F.2d 70 (2d Cir.1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994).

### 1. Official–Capacity Claims

■ The Municipal defendants assert that the claims should be dismissed against them in all respects on the basis of their legislative immunity. (Mun.Defs.' Mem. of Law at 21.) Granting such a motion would presumably include the claims made against them in their official-capacity. However, a public officer named as a defendant in his/her official-capacity in a § 1983 suit is not entitled to assert personal immunity defenses, but only the immunities available to the governmental entity. *Hafer v. Melo,* 502 U.S. 21, 25–27, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); *see also Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (citing *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)); *Goldberg v. Whitman,* 740 F.Supp. 118 (D.Conn.1989) (denying motion to dismiss official-capacity suits on basis of legislative immunity), *aff. sub. nom Goldberg v. Town of Rocky Hill,* 973 F.2d 70 (2d Cir.1992); *Herbst v. Daukas,* 701 F.Supp. 964, 969–70 (D.Conn.1988) (same). As the Town of North Hempstead cannot claim immunity under § 1983, *Ferran v. Town of Nassau,* 11 F.3d at 23, the Town defendants in their official capacity cannot assert immunity. Nevertheless, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Services of City of N.Y.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). A plaintiff who prevails in an official-capacity suit must look to the government entity as the real party in interest. *See Hafer,* 502 U.S. at 23–25, 112 S.Ct. at 361; *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Where the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant. *Graham,* 473 U.S. at 166–67 & n. 14, 105 S.Ct. at 3105–06 & n. 14; *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985) (official capacity claim against public officer is claim against the office held by that person, rather than against the particular individual who occupies that office at the time the claim arose).

■ Here the claimed injury is allegedly the result of a policy of the municipality, i.e., the passage of a budget reduction plan. (Compl. ¶ 119.) Therefore, claims against its officers in their official capacities are in reality claims against the Town of North Hempstead itself. *See Graham,* 473 U.S. at 165, 105 S.Ct. at 3104–05. Consequently, the official-capacity claims against Zwirn, both as Supervisor and Board Member, and Newburger, D'Urso, Johnson and Cunningham, as Town Board Members, must be dismissed, not because these parties have immunity but merely because the Town is the real party in interest. *See e.g., Orange v. County of Suffolk,* 830 F.Supp. at 706–07 (official-capacity claims redundant because claim is made against local governmental entity) (citing *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991) and *Kohn v. Mucia,* 776 F.Supp. 348 (N.D.Ill.1991); *cf. Goldberg v. Whitman,* 740 F.Supp. at 120–21 (motion to dismiss official-capacity claims on legislative immunity denied); *Dusanenko v. Maloney,* 560 F.Supp. 822, 827–28 (S.D.N.Y.1983) (finding immunity from personal liability for individual defendants but no immunity for the municipality), *aff'd,* 726 F.2d 82 (2d Cir.1984).

Similarly, the official capacity claims against each of the appointed Town officials must be dismissed. This includes official

capacity claims against Middlemark as Executive Assistant to the Supervisor, Biamonte as Director of Legislative Affairs, and Nedelka as Commissioner of Finance. Each of these Town employees are named because of their involvement as legislative aides in developing the plan to eliminate the plaintiffs' positions. (Compl. ¶¶ 57, 58.) Therefore, any official-capacity § 1983 claim against these town employees is a redundant method of stating a claim against the Town itself. *See Monell,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

### 2. Individual–Capacity Claims

The Municipal defendants also move to dismiss all claims against them in their individual capacity based upon legislative immunity. (Mun.Defs.Mem. of Law at 21.) These defendants maintain that because the complained of actions involve the approval of resolutions effecting budget cuts, they are "absolutely immune from suit." (*Id.*)

#### a. Individual Board Members

■ Legislative immunity protects a legislator from being sued under § 1983 in his/her individual capacity for legitimate legislative acts. *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951); *Orange Lake Assoc. v. Kirkpatrick,* 21 F.3d at 1224 (town board members); *Goldberg,* 973 F.2d at 72–73 (same); *Orange v. County of Suffolk,* 830 F.Supp. 701, 704 (E.D.N.Y. 1993) (county executive and county legislators); *Dusanenko,* 560 F.Supp. at 827 (town board members). The Supreme Court has endorsed a "functional" analysis to determine whether legislative immunity is available. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). A court identifies and analyzes the "nature of the functions with which a particular official or class of officials has been lawfully entrusted, and ... evaluate[s] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.*

Here, the plaintiffs claim that their positions were eliminated by resolutions passed by a majority of the Town Board (Compl. ¶ 49.) Defendants argue that such budgeting decisions are properly within the legislative function of a Town Board under New York Town Law §§ 51, 60, 64, 106–109 (McKinney 1987). The plaintiffs, relying on *Forrester,* argue that employment decisions are *administrative,* not *legislative,* and therefore not entitled to immunity. (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, hereinafter "Pls.Mem. in Opp'n" at 23.) In the alternative, plaintiffs argue it is premature to determine the nature of the exercise here. (*Id.*)

■ The alleged facts establish that budget lines for many civil service positions of the Town were eliminated by the vote of the Town Board. (Compl. ¶ 49.) As a result of this official act, the plaintiffs' employment was terminated.[2] The decision to hire or fire any particular employee within a position is arguably administrative. *See Visser v. Magnarelli,* 542 F.Supp. 1331 (N.D.N.Y.1982) (decision to deny rehiring particular former city employee, even though by vote of city council, administrative function); *Detz v. Hoover,* 539 F.Supp. 532, 543 (E.D.Pa.1982) ("whether defendants' failure to rehire plaintiff was an administrative or legislative function does not admit to facile resolution. However, we believe that a municipality's employment decisions whether they regard hiring, firing or a failure to reinstate, are essentially *administrative* in nature"); *contra Dusanenko v. Maloney,* 560 F.Supp. 822, 827 (S.D.N.Y.1983) (members of town board acted in legislative capacity in failing to reappoint deputy town attorney and reducing salary of supervisor's confidential secretary). However, the elimination of the position itself is a legislative act, notwithstanding that the employee who holds that position is then terminated or otherwise adversely effected. *See Baker v. Mayor and City Council of Baltimore,* 894 F.2d 679, 682 (4th Cir.) (elimination of city employees positions by budget resolution "uniquely legislative function"), *cert. denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); *Rateree v. Rockett,* 852

---

**2.** With respect to plaintiff Rhoda Becker, however, the complaint does not allege that her position, Commissioner of Planning and Development, was eliminated by resolution, but that her occupancy of this *appointed* position was not renewed at the end of her term.

F.2d 946, 950 (7th Cir.1988) (elimination of certain jobs by budgetary decision "quintessential legislative function, reflecting the legislators' ordering of policy priorities in the face of limited financial resources"); *Drayton v. Mayor and Council of Rockville*, 699 F.Supp. 1155 (D.Md.1988) (defendants entitled to legislative immunity for budgetary elimination of plaintiff's position notwithstanding claims of discriminatory motive), *aff'd*, 885 F.2d 864 (4th Cir.1989); *Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir.1983) (elimination of assistant building inspector position by enacting ordinance was legislative function); *Orange*, 830 F.Supp. at 705 (adoption of budgetary resolution which eliminated plaintiffs' positions was legislative act); *Herbst*, 701 F.Supp. at 968 (elimination of police lieutenant's position by budget reduction resulting in demotion of plaintiff "clearly a legislative action").

The plaintiffs argue that immunity should be unavailable, notwithstanding that the positions were eliminated, because the plaintiffs lost their jobs and their functions were assumed by employees in remaining positions. (Pls.Mem. in Opp'n at 23.) This argument is of no avail. In *Rateree*, the Seventh Circuit found the defendant City Commissioners absolutely immune from suit for voting to eliminate funding for the plaintiffs' positions, notwithstanding the plaintiffs' claim that they were first harassed and then discharged based on their political views rather than budgetary considerations. 852 F.2d at 951. The *Rateree* court held that the fact that individuals lost their jobs did not transform a legislative act to one of an administrative nature. *Id.* at 950. In fact, the very policy underlying legislative immunity is premised on the fact that

> [b]ecause government officials are engaged by definition in governing, their decision will often have adverse effects on other persons. When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise skew their decisions in ways that result in less than full fidelity to the

objective and independent criteria that ought to guide their conduct.

*Forrester*, 484 U.S. at 223, 108 S.Ct. at 542.

■ Therefore, this Court finds that plaintiffs' § 1983 cause of action against the Town Board members personally, must be dismissed. The Town Board members acted within the scope of their legitimate legislative capacity in voting to eliminate the funding for plaintiffs' positions. Even assuming an illegitimate motive in voting for the budget resolutions, the Board members are entitled to personal immunity for these legislative acts. *See e.g. Rateree*, 852 F.2d at 951; *Orange*, 830 F.Supp. at 705.

b. Zwirn as Town Supervisor

Also relying on *Forrester*, plaintiffs assert that Zwirn, as chief executive of the Town, is not a legislator and therefore not entitled to assert legislative immunity. (Pls.Mem. in Opp'n at 24.) Presumably plaintiffs are analogizing the dictum of *Forrester* that state executive officials are not entitled to absolute immunity for their official acts to the same extent as the President of the United States. *See* 484 U.S. at 226, 108 S.Ct. at 543–44. However, the Municipal defendants do not assert Zwirn's immunity as an executive, but only with respect to his participation in approving legislated Board resolutions. (Mun. Defs.Mem. of Law at 21.)

■ Although defendant Zwirn is chief executive of the Town, he has legislative responsibilities in his dual capacity as a Town Board member. N.Y.Town Law §§ 60, 63 (McKinney 1987); *see also Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir.1983) (holding that a mayor, although the executive officer, may still have legislative functions); *Orange*, 830 F.Supp. at 706 (county executive entitled to legislative immunity for act of signing resolution eliminating county civil service positions). Active participation in the legislative process entitles an executive to absolute immunity. *Aitchison*, 708 F.2d at 99. Zwirn is therefore entitled to legislative immunity and therefore the § 1983 claims against him personally must be dismissed.

### c. Town Legislative Aides

■ The Court holds that Middlemark, Biamonte, and Nedelka are also extended legislative immunity in their individual capacities for the § 1983 claims. As noted above, these three individuals are named in the complaint as a result of their capacity as high-level advisors to the supervisor and Board with respect to the development of the planned elimination of the plaintiffs' positions by Board resolution. (Compl. ¶¶ 57, 58.)

■ The official immunity available to legislators is extended to legislative aides "insofar as the conduct of the [aide] would be a protected legislative act if performed by the Member himself." *Gravel v. United States,* 408 U.S. 606, 618, 92 S.Ct. 2614, 2623, 33 L.Ed.2d 583 (1972). This "legislative aide" immunity has been extended to both state and local government officials. *Hudson v. Burke,* 617 F.Supp. 1501, 1509–10 (N.D.Ill. 1985), *aff'd,* 913 F.2d 427 (7th Cir.1990) (city finance committee chairman); *Aitchison v. Raffiani,* 708 F.2d 96, 99–100 (3d Cir.1983) (borough attorney acting as legal aide in the course of legislative drafting); *Green v. De-Camp,* 612 F.2d 368, 371 (8th Cir.1980) ("committee counsel" to state senatorial committee members).

Although the Municipal defendants, which include these three particular defendants (Mun.Defs.Mem. of Law at 2), do not explicitly assert the legislative privilege with respect to Middlemark, Biamonte, and Nedelka, it nevertheless follows from the assertion of the argument in favor of the individual Board members (Mun.Defs.Mem. of Law at 21), that for the reasons stated, the aides are entitled to legislative immunity in that the complaint questions their conduct in the course of their duties in assisting to develop this legislation. Therefore the individual-capacity § 1983 claims against Middlemark, Biamonte, and Nedelka must be dismissed.

### B. SUFFICIENCY OF THE § 1983 CLAIMS

Plaintiffs allege that the elimination of their positions, resulting in termination of their employment, was solely based on their political affiliation. · (Compl. ¶ 2.) Plaintiffs assert that these terminations violated their rights under the First and Fourteenth Amendments (Compl. ¶ 112), and the Fourth, Fifth, and Ninth Amendments. (Compl. ¶ 120.) The defendants argue that the First Amendment § 1983 causes of action should be dismissed for failure to state a claim because the defendants were not "fired" but that their positions were merely eliminated by a policy-based, large-scale budget cut, and therefore no constitutional claim can arise. (Mun.Defs.Mem. of Law at 16.) As to the other constitutional claims, the defendants argue that they are simply "makeweight." (*Id.* at 17.)

### 1. First Amendment Claim
#### a. Town of North Hempstead

■ Plaintiffs argue that these budget cut job eliminations were conceived in a manner which violated their First and Fourteenth Amendment rights under the trilogy of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). (Pls.Mem. in Opp'n at 14–15.) The sum of this trilogy of cases is that a governmental employment decision based upon political patronage may be actionable as a First Amendment violation. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 69–71, 110 S.Ct. 2729, 2734–35, 111 L.Ed.2d 52 (1990) (discussing *Branti* and *Elrod*).

■ The Municipal Defendants assert that the § 1983 causes of action should be dismissed because the above noted cases do not apply to the facts here. (Mun.Defs.Mem. of Law at 15.) Defendants attempt to distinguish each of the above referenced cases and the instant circumstances based on the fact that the *Elrod* trilogy involves political patronage employment decisions regarding existing positions, whereas here the positions were eliminated altogether by budget resolutions. (*Id.* at 16.) The defendants assert that the plaintiffs' First Amendment claim is thus one of first impression and does not fall within the doctrine first articulated in *Elrod.* (Mun.Defs.Mem. of Law at 14.) The Municipal defendants argue that no First Amend-

ment claim arises because the plaintiffs were not "fired," but that their positions were merely eliminated by "large scale, unconditional, and unaltered elimination of government jobs." (Mun.Defs.Mem. of Law at 16.) The defendants further argue that the First Amendment is not implicated as under *Elrod, Branti,* or *Rutan,* because no plaintiff alleges their position was lost to a Democrat. (Mun.Defs.Reply Br. at 16.)

The United States Court of Appeals for the Second Circuit has previously recognized a § 1983 cause of action where a public employee asserted that his position was eliminated by legislative action in retaliation for exercising his First Amendment rights. *Vezzetti v. Pellegrini,* 22 F.3d 483 (2d Cir.1994); *Goldberg v. Town of Rocky Hill,* 973 F.2d 70 (2d Cir.1992); *see also Herbst v. Daukas,* 701 F.Supp. 964, 967 n. 2 (D.Conn.1988). This district, on facts very similar to those presented here, also recognized a § 1983 cause of action based on the First Amendment where civil service positions were eliminated by legislation. *Orange v. County of Suffolk,* 830 F.Supp. 701 (E.D.N.Y.1993).[3] In addition, the Third and Seventh Circuit Courts of Appeal, and lower courts in the Sixth and Ninth Circuits have also found similar claims cognizable in the face of budget reduction defenses. *Rateree v. Rockett,* 630 F.Supp. 763, 772–73 (N.D.Ill.1986) (denying motion to

dismiss § 1983 claim against city for alleged politically motivated budget cuts eliminating plaintiffs' positions), *aff'd,* 852 F.2d 946 (7th Cir.1988); *Aitchison v. Raffiani,* 708 F.2d 96, 99–100 (3d Cir.1983) (substantively recognizing claim against municipality for ordinance abolishing plaintiff's position, but dismissing complaint on statute of limitations grounds); *Lupo v. Voinovich,* 858 F.Supp. 699, 703–04 (S.D.Ohio 1994) (upholding claim of politically motivated abolishment of position); *Rabkin v. Dean,* 856 F.Supp. 543, 548–49 (N.D.Cal. 1994) (recognizing allegation of politically motivated legislated salary reduction against city).[4]

The defendants' attempt to distinguish *Elrod* and its progeny on the basis of a budget induced abolishment of the positions, as opposed to dismissal, fails to acknowledge the thrust of the plaintiffs' allegation; that the particular positions selected for elimination were selected based upon a bad faith motive to retaliate against the individuals holding those positions for their notable support for the prior political administration. This allegation brings the complaint within *Elrod* and its progeny. *See Vezzetti,* 22 F.3d at 488 (claim of job elimination cognizable under *Branti–Elrod* where there exists evidence of political retribution).

Moreover, actionable political patronage decisions are not contingent upon the allega-

3. Other courts have recognized the § 1983 First amendment claim despite the defense of elimination of the position by budgetary considerations or legislation, however, they have dismissed the case on summary judgement for failure to meet the burden of proof or on some other basis. *See e.g., Laidley v. McClain,* 914 F.2d 1386 (10th Cir.1990) (claim of politically motivated discharge of employees of district attorney's office, dismissed against state on 11th Amendment grounds on summary judgment, but remanding case on issue of whether district attorney was entitled to qualified immunity); *Dusanenko v. Maloney,* 560 F.Supp. 822, 829 (S.D.N.Y.1983) (recognizing First Amendment § 1983 claim against town for elimination of positions by legislation, but dismissing claim on summary judgement for failure to rebut undisputed facts "that the actions were motivated at least in part by a genuine concern for the proper operation of the town's business, rather than 'political vindictiveness' ").

4. Also in *Hollyday v. Rainey,* 964 F.2d 1441 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 567 (1992), the Fourth Circuit dismissed a First Amendment claim under similar factual circumstances. However the decision was the result of a plurality opinion, with one judge (Hall, J.) denying the claim based upon an extension of legislative immunity to the governmental entity itself, as the employment determination was legislative. Two judges disagreed with Hall's extension of legislative immunity to the governmental entity as being foreclosed by the Supreme Court's decision in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). However the concurring judge (Luttig, J.) opted to rule against the plaintiff on a failure to meet the required burden of proof. This Court notes that Judge Hall's extension of immunity to the governmental entity in *Hollyday* is directly contrary to the law in this Circuit as articulated in *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 73–74 (2d Cir.1992), that such an extension of the immunity doctrine is contrary to the holding of *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

tion of a dismissal *per se.* In *Rutan,* the Supreme Court extended the holdings of *Elrod* and *Branti* to government employment determinations less severe than dismissal, yet still motivated by patronage. *See Rutan,* 497 U.S. at 75, 110 S.Ct. at 2737. The *Rutan* Court rejected the view that only patronage practices which are the "substantial equivalent of a dismissal" are actionable as First Amendment violations in holding an executive order invalid which prohibited hiring, filling of vacancies, and creation of new positions without first examining political factors. *Id.; see also Lieberman v. Reisman,* 857 F.2d 896, 900 (2d 1988) (denial of earned comp and vacation time based on opposition political campaign for office); *Herbst,* 701 F.Supp. at 967 (demotion).

The key to plaintiffs' position is the allegation that the defendants have attempted to shield their improperly motivated employment decision by pretexually formalizing it within budget resolutions. (Compl. ¶ 45.) The plaintiffs allege that the defendants created a list of active Republicans, from which the plaintiffs' positions were selected for budget elimination. (Compl. ¶¶ 60, 66.) Plaintiffs assert that the only basis for selecting their particular positions for elimination is that the individuals holding those positions were known to be especially active Republican supporters. (Compl. ¶ 66.) The defendants assert that plaintiffs' First Amendment rights were not infringed because elimination of their positions for budgetary reasons is a permissible policy decision. Even if the plaintiffs have no "right" to their positions, and "even though the government may deny [plaintiffs] the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Elrod,* 427 U.S. at 360–61, 96 S.Ct. at 2683 (*quoting Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)). Therefore, at this preliminary stage of the proceedings, the plaintiffs' sufficiently allege a First Amendment violation to sustain their § 1983 claim against the Town.

■ Moreover, even assuming that the defendants are correct in arguing that to state a claim the plaintiffs must allege that their positions were filled by members of the opposing party, the plaintiffs still allege a valid claim on the basis of political retaliation. Retaliatory state action aimed at a person's exercise of their First Amendment rights is actionable under § 1983. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Coughlin v. Lee,* 946 F.2d 1152, 1158 (5th Cir.1991) (allegation of retaliatory political discharge not subject to threshold "public concern" requirement); *Rakovich v. Wade,* 850 F.2d 1180, 1189 (7th Cir.) (allegation that police investigation was conducted in retaliation for protected First Amendment conduct actionable under § 1983), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *Lieberman v. Reisman,* 857 F.2d 896 (2d Cir.1988) (retaliation for partisan opposition political campaign actionable as First Amendment violation under § 1983); *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986) ("State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment" (citing *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).

■ The plaintiffs allege they were approached by representatives of the Zwirn administration and offered a choice to either renounce their support for the Republican party or lose their jobs. (Compl. ¶¶ 69–71.) In retaliation for their refusal to renounce their Republican support, their jobs were eliminated. The plaintiffs' allegation infers that had they openly renounced their support for the Republican Party their particular positions would not have been subjected to the budget cuts. Therefore, the plaintiffs have alleged a *prima facie* claim against the Town under § 1983 for retaliation for their exercise of First Amendment rights. *See Elrod,* 427 U.S. at 359, 96 S.Ct. at 2682–83 (threat of dismissal for failure to provide political support inhibits protected belief and association, and dismissal penalizes its exercise).

b. Non–Town Defendants

■ Plaintiffs broadly allege their First Amendment § 1983 cause of action against all defendants, including those not

officially affiliated with the Town such as Nehrich [5], Friends of Ben Zwirn ("Friends"), and Peckelis. Section 1983 liability may lie against a private party who willfully conspires with government officials under color of state law to deprive the plaintiff of a constitutionally protected right. *See Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2824–25, 81 L.Ed.2d 758 (1984) (allegation of conspiracy with state officials includes adequate allegation of conduct under color of state law); *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) (it is enough that he is a willful participant) (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)); *see also Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 n. 12 (2d Cir.1984), *aff'd,* 758 F.2d 46 (2d Cir.1985), *cert. dismissed,* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986). To sustain such a claim, the plaintiff must allege facts demonstrating that the private entity acted in concert with the state actor. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

### i. Nehrich and the CSEA

▇ Here plaintiffs claim the Municipal defendants were able to single-out their positions based on information provided about the plaintiffs' activity on behalf of the opposition political party. Plaintiffs allege that Nehrich provided lists of town employees and identified which town employees were politically active. (Compl. at ¶¶ 59–60, 64–66.) This allegation states sufficient facts to sustain the § 1983 cause of action against Nehrich. *See Spear,* 954 F.2d at 68. Moreover, as a private individual, Nehrich may not rely on any common law form of immunity. *See Tower,* 467 U.S. at 920–23, 104 S.Ct.

at 2824–26 (only congress may establish immunities to § 1983 liability not found at common law).

The plaintiffs also name Nehrich as a defendant in his capacity as President of the Town of North Hempstead Civil Service Employees Association (hereinafter "CSEA"). However, the plaintiffs fail to name the CSEA as a defendant. The CSEA has moved to dismiss the complaint on the basis that none of Nehrich's alleged acts are said to be performed in his official capacity, and therefore cannot be attributed to the CSEA. (CSEA Mem.Law at 2.) Presumably the intent of naming Nehrich as a union official is to obtain relief against the CSEA. However, the Court finds that there is no allegation in the complaint which would indicate that Nehrich was acting within the scope of his capacity as a union official, or that his alleged acts were ratified or even known to the CSEA.

Therefore, the issue is whether the CSEA can be held liable for Nehrich's acts by a theory of agency or *respondeat superior.* The plaintiffs do not indicate what legal entity they seek relief from; whether the CSEA local or the national parent, whether an unincorporated association or a corporation.

▇ If the entity from which plaintiffs seek relief is an unincorporated association, plaintiffs must allege facts that demonstrate that Nehrich had apparent authority for his acts. *Jund v. Town of Hempstead,* 941 F.2d 1271, 1279–81 (2d Cir.1991) (rejecting requirement for total membership ratification theory of liability in § 1983 suits against unincorporated association). In addition, the plaintiffs must allege facts which indicate that Nehrich's acts were "done on behalf of the union." *Jund,* 941 F.2d at 1280 (*citing American Bridge Div., U.S. Steel Corp. v. Int'l Union of Operating Eng'rs,* 772 F.2d 1547, 1551 (11th Cir.1985). *Jund* and the cases cited therein may also be distinguished

---

**5.** The complaint acknowledges that Nehrich "was and is an employee of" the Town. (Compl. at ¶ 25.) However, Nehrich is named as a defendant only as an individual and in his capacity as president of the CSEA local; no allegation against Nehrich pertains to his employment with the Town. Therefore, all discussion with respect to Nehrich will pertain only to the capacities in which he is named in the complaint. Moreover,

even if he had been named in his capacity as a Town employee, this aspect of the complaint would most certainly be dismissed because under *Monell,* the Town could not be liable for his acts on theory of *respondeat superior* as it is not claimed that he held a policy-making position and thus could not assert any immunity defenses. Nehrich would therefore still be held liable as an individual.

by the fact that these cases presented the courts with ample facts to support a finding of such authorization. 941 F.2d at 1280 ("ample evidence connecting numerous Committee members to the coercive contribution scheme"). Here, no connection is alleged as to how the CSEA, local or otherwise, is in any way connected to Nehrich's alleged acts.

■ The CSEA national has answered that they are a not-for-profit corporation. (CSEA Mem. of Law at 2.) The CSEA, relying on *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406 (2d Cir.1990), *cert. denied*, 502 U.S. 809, 112 S.Ct. 52, 116 L.Ed.2d 30 (1991), argues that they cannot be held liable for Nehrich's acts because there is no *respondeat superior* liability for corporations under § 1983. This overstates the case. Under *Rojas,* corporate liability for the constitutional torts of an employee is dependent on a showing that the acts were in furtherance of an impermissible corporate policy. *See Rojas,* 924 F.2d at 409 (citing *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)). The complaint contains no allegation of any causal relationship between Nehrich's alleged acts and any policy of the CSEA.

■ Nevertheless, plaintiffs contend that they were injured by the improper basis upon which their positions were selected for elimination. Thus any § 1983 liability for the CSEA would require a showing that the CSEA "conspired" with the Municipal defendants to violate the plaintiffs' First Amendment rights. On the facts alleged, no such inference can be drawn, as the plaintiffs have failed to plead that the principal (CSEA) is responsible for the acts of its purported agent (Nehrich). Instead, plaintiffs have alleged only that Nehrich individually conspired with the Town to violate the plaintiffs' constitutional rights.

Therefore, the civil rights claims against Nehrich in his capacity as "President of the Town of North Hempstead CSEA" fails to state a claim and is dismissed. Plaintiffs have failed to name the appropriate entity, and have failed to state any facts alleging liability of CSEA whether by Nehrich's apparent authority with acts on behalf of the union, or by demonstrating acts in further-

ance of an impermissible CSEA policy. Moreover, the fundamental purpose of a public employer labor union is to collectively bargain on behalf of civil service employees and not to contribute to their discharge from employment. Therefore, this Court views it as highly unlikely that the plaintiffs can show that Nehrich's alleged acts were in furtherance of a CSEA policy to terminate civil service employees on the basis of political patronage, or that the CSEA held Nehrich out as having the authority to do such acts and that such acts were on behalf of the CSEA. Nevertheless, although this Court is doubtful of plaintiffs' ability to support an amended pleading, plaintiffs are granted leave to file an amended complaint which names the proper CSEA defendant and plead sufficient allegations to demonstrate that the entity, in whatever legal form, is liable for the constitutional torts of Nehrich.

ii. Friends of Ben Zwirn and Peckelis

Similarly, plaintiffs' civil rights claims include the political committee Friends of Ben Zwirn ("Friends"), and its treasurer Alice Peckelis. (Compl. ¶¶ 29, 31.) To state a claim against a private entity under § 1983, the plaintiff must allege that the private party willfully conspires with government officials under color of state law to deprive the plaintiff of a constitutionally protected right. *See Tower v. Glover,* 467 U.S. at 920, 104 S.Ct. at 2824–25; *Spear,* 954 F.2d at 68. Friends moves to dismiss for failure to state such a claim.

■ The complaint contains one paragraph which identifies Friends or Peckelis as a participant in these alleged acts. (Compl. at ¶ 89.) The plaintiffs allege that Friends

served as a repository of campaign support, including financial support . . . which financial contributions manifested to defendants the TOWN employees who were now supporting defendants and the administration of defendant, Zwirn.

(*Id.*) This allegation is wholly insufficient to establish the liability of Friends or Peckelis under § 1983. *Spear,* 954 F.2d at 68. Nothing in paragraph 89, or anywhere else in the complaint, establishes that Friends acted under color of state law. *Id.* Nor is there any

possible set of facts which could demonstrate that Friends or Peckelis acted as willful participants in the creation of legislation, allegedly based upon political animus, simply by being a repository of campaign contributions. Therefore the § 1983 claims against Friends and Peckelis are dismissed with prejudice.

Therefore, the fourth cause of action, based upon a First Amendment § 1983 claim, is sustained against the Town and Nehrich in his individual capacity. The First Amendment § 1983 cause of action is dismissed against all other defendants, officially and individually. The plaintiffs are granted leave to replead this cause of action against the proper CSEA entity.

### 2. Fourth, Fifth, and Ninth Amendment Claims

The plaintiffs' fifth cause of action alleges that the elimination of their positions violated the Fourth, Fifth, and Ninth Amendments under § 1983. (Compl. ¶ 120.) The plaintiffs' fifth cause of action must be dismissed with prejudice, as the allegations can under no circumstances establish a violation of these provisions of the Bill of Rights.

#### a. Fourth Amendment

Although the Fourth Amendment is applicable to the states as incorporated through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the plaintiffs have alleged no facts that implicate a Fourth Amendment right. The Fourth Amendment has been interpreted to protect against unreasonable searches and seizures where there exists a reasonable expectation of privacy. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Searches and seizures of public employees' personal property are subject to the restraints of the Fourth Amendment. *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). However, "the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.* at 718, 107 S.Ct. at 1498.

Here the plaintiffs do not allege a search or seizure, or any conduct which implicates the Fourth Amendment. Therefore the plaintiffs Fourth Amendment allegation does not give rise to a § 1983 cause of action. *See e.g. Sheppard v. Beerman*, 18 F.3d 147, 152–53 (2d Cir.) (affirming dismissal of Fourth Amendment § 1983 cause of action in context of employment termination on failure to allege facts implicating Fourth Amendment rights), *cert. denied*, —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

#### b. Fifth Amendment

The plaintiffs also allege a Fifth Amendment due process violation. (Compl. ¶¶ 120, 121.) The plaintiffs' right to due process of law with respect to action by a state or any of its subdivisions is derived from the Fourteenth Amendment. The Fifth Amendment in and of itself pertains only to actions of the federal government. As the plaintiffs have not alleged any acts by the federal government, or an act by any defendant associated with the federal government, the plaintiffs' Fifth Amendment § 1983 claim must be stricken. *See e.g., Heath v. Highland Park Sch. Dist.*, 800 F.Supp. 1470, 1475 (E.D.Mich.1992); *Three Rivers Cablevision Inc. v. City of Pittsburgh*, 502 F.Supp. 1118, 1134 (W.D.Penn.1980).

#### c. Ninth Amendment

The plaintiffs conclusorily allege a Ninth Amendment violation as an additional basis for a § 1983 claim. (Compl. at ¶ 120). This claim must also be stricken. Section 1983 claims must be based upon a specific constitutional guarantee. *See Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (dismissing § 1983 claim for failing to indicate specific constitutional guarantee safeguarding the allegedly infringed interest). The Ninth Amendment is recognized as a rule of construction, not one that protects any specific right. Laurence H. Tribe, American Constitutional Law § 11–3, at 774–75 (2d ed. 1988). No independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action. *See Gibson v. Matthews*, 926

F.2d 532, 537 (6th Cir.1991) (Ninth Amendment claim has no applicability in suit under § 1983); *Schowengerdt v. United States,* 944 F.2d 483, 490 (9th Cir.1991) (section 1983 Ninth Amendment claim meritless as not independently securing any constitutional rights), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 650 (1992); *Strandberg v. City of Helena,* 791 F.2d 744, 748 (9th Cir. 1986) (Ninth Amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim) (citing cases). Moreover, the Ninth Amendment has not been interpreted to be incorporated into the due process clause of the Fourteenth Amendment, and therefore has no applicability to the allegations against these non-federal actors. *See* Tribe, § 11–2, at 772–73.

Therefore, the fifth cause of action, which is based upon the Fourth, Fifth, and Ninth Amendments is dismissed with prejudice.

## II. SECTION 1985 CLAIMS

In the sixth count of the complaint, plaintiffs claim that the defendants conspired to violate their civil rights under 42 U.S.C. § 1985(3). (Compl. at ¶¶ 124–30.) Plaintiffs maintain that as members of the Republican Party they are a protected class. (Compl. ¶ 125.) The defendants move to dismiss upon the ground that members of the Republican party do not comprise a protected class for the purposes of § 1985 liability. (Mun. Defs.Mem. of Law at 19); (Friends Mem. of Law at 9.) The Municipal defendants also move to dismiss the § 1985(3) claims against them in their individual capacity on the grounds of immunity. (Mun.Def.Mem. of Law at 18.)

■ To plead a violation of 42 U.S.C. § 1985(3) the plaintiffs must allege four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the law; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters v. Scott,* 463 U.S.

at 828–29, 103 S.Ct. at 3356 (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)).

### A. PROTECTED CLASS

■ The defendants' challenge to the plaintiffs' status as a class under the second required element of *Scott* and *Griffin* squarely raises the question of the viability of the Second Circuit's decision in *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983). In *Keating,* the court held that the allegation that the defendants discriminated against him because of his membership in a political party satisfied the class requirement under § 1985(3). *Id.* at 388 & n. 18. Plaintiffs rely on *Keating* for the proposition that their membership in the Republican Party qualifies for protected class status, and that a § 1985 cause of action may be based upon political animus. (Pl.Mem. in Opp'n at 22.) The defendants assert that in light of *Scott,* section 1985 is limited to protecting race-based animus, and therefore, the plaintiffs do not qualify for § 1985(3) protection. (Mun.Defs.Mem. of Law at 19); (Friends Mem. of Law at 9.)

In *Scott,* the Supreme Court held that non-union employees were not a protected class, and continued the narrow interpretation of protected classes under § 1985 which began in *Scott,* 463 U.S. at 830, 103 S.Ct. at 3357. The *Scott* Court consciously avoided a broad reading of the scope of § 1985 so to avoid creating a "general federal tort law" by reaffirming the *Griffin* requirement of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Scott,* 463 U.S. at 834, 103 S.Ct. at 3359 (citing *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798). The Court explicitly held that § 1985(3) did not reach economic or commercial animus, but left unanswered the meaning of the phrase, "perhaps otherwise class-based." *Scott,* 463 U.S. at 837, 103 S.Ct. at 3360–61. ("Even if the section must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, ... we find no convincing support ... for the proposition that the provision was intended to reach conspiracies motivated by bias toward others on account of their *economic* views, status or

activities.") (emphasis in original). Similarly, in *Bray v. Alexandria Women's Health Clinic*, — U.S. —, —, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993), the Court was faced with the argument that women, as a class, qualified for protection under § 1985(3). However, the *Bray* Court declined to answer that question because it rejected the claim that groups opposed to abortion reflected an animus toward women generally. — U.S. at —, 113 S.Ct. at 759. The Court found that the classification at issue was a "definitional ploy." *Id.*

In *Keating*, the Second Circuit reviewed the legislative and historical context of the enactment of § 1985(3), and noted that the Ku Klux Klan was not merely a racist organization but also a political organization intent on intimidating others, particularly northern Republicans ("carpetbaggers"). 706 F.2d at 387 & n. 17. In holding that a conspiracy based on political animus was actionable under § 1985(3), the court stated that "Congress did not seek to protect only Republicans, but to prohibit political discrimination in general." *Id.* Consequently, the *Keating* Court held that members of a political party qualify as a protected class under § 1985(3). *Id.* at 388.

In *Scott*, the Court stated, in dicta,

we find difficult the question of whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts ... the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.

463 U.S. at 836, 103 S.Ct. at 3360. The defendants urge this Court to follow this dictum and reject the holding of *Keating*, as the Seventh and Fourth Circuits have done.

*Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985); *Harrison v. KVAT Food Mgt. Inc.*, 766 F.2d 155 (4th Cir.1985); *contra Conklin v. Lovely*, 834 F.2d 543 (6th Cir.1987). However, despite the cautionary wording of *Scott*, and the holdings of the Fourth and Seventh Circuits, this Court is bound by the holding in *Keating* which is still the law of this circuit.[6] Therefore, as the complaint alleges that the defendants were motivated by plaintiffs' membership in the Republican Party, this Court finds that the plaintiffs comprise a protected class under 42 U.S.C. § 1985(3).

## B. SUFFICIENCY OF THE § 1985 CLAIMS

The plaintiffs claim that the Municipal defendants acted in concert with Nehrich and Friends to deprive them of employment on the basis of their political affiliation and in an effort to intimidate or chill the remaining employees' opposition political activity. (Compl. ¶¶ 2, 45, 65.)

### 1. Municipal Defendants

The Municipal defendants assert that the § 1985 claims must fail with respect to them because an "agreement between the Town and its own officers and employees cannot constitute a conspiracy." (Mun. Defs.Mem. of Law at 21.) In essence, they invoke the "intracorporate conspiracy" doctrine which is premised on the concept that a corporation generally cannot conspire with its employees or agents as all are considered a single legal entity. *See Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir.) (applying intracorporate immunity to § 1985 cause of action), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976)); *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972) (same). This is particularly so where the officers and employees are alleged to be acting within the scope of their employment. *Herrmann v. Moore*, 576 F.2d 453, 459 (2d

---

**6.** Subsequent to *Scott*, this Circuit declined to hold that membership in a particular political party does not constitute a basis for protection under § 1985. *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir.1989). So too, have two district courts. *Blankman v. County of Nassau*, 819 F.Supp. 198, 206 (E.D.N.Y.), *aff'd*, 14 F.3d 592 (2d Cir.1993); *Platsky v. Kilpatrick*, 806 F.Supp.

358, 363 (E.D.N.Y.1992). However, one district court judge has since affirmatively relied upon *Keating*. *Affrunti v. Zwirn*, No. CV-92-1512 (E.D.N.Y. Aug. 31, 1992). In addition, the Sixth Circuit, on similar facts as here, was constrained to follow prior circuit decisions in not following the dicta of *Scott*. *Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir.1987).

Cir.1978), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978). Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees. *See Wintz v. Port Authority of New York & New Jersey,* 551 F.Supp. 1323 (S.D.N.Y.1982) (section 1985 would not apply unless plaintiff could show that external parties were involved) (citing *Girard,* 530 F.2d 66 (2d Cir.1976)); *Davidson v. Yeshiva University,* 555 F.Supp. 75, 79 (S.D.N.Y.1982) (employees of university could not conspire with university under § 1985) (also citing *Girard* ); *Lieberman v. Gant,* 474 F.Supp. 848 (D.Conn.1979) (intracorporate immunity where each of the defendants acted within scope of their official position), *aff'd,* 630 F.2d 60 (2d Cir.1980); *see also Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364, 1371 (4th Cir.) (police commissioner could not conspire with police department under § 1985 in allegedly unlawful employment determination), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Runs After v. United States,* 766 F.2d 347, 354 (8th Cir.1985) (members of tribal council could not, under § 1985, conspire with themselves or council as an entity in taking official action); *Rabkin v. Dean,* 856 F.Supp. 543, 551 (N.D.Cal.1994) (city council members could not conspire with city to deny plaintiff salary increases for political reasons); *Roybal v. City of Albuquerque,* 653 F.Supp. 102, 107 (D.N.M.1986) (citing cases); *Gladden v. Barry,* 558 F.Supp. 676 (D.D.C. 1983); *Edmonds v. Dillin,* 485 F.Supp. 722, 729 (N.D.Ohio 1980); *but see Rebel Van Lines v. City of Compton,* 663 F.Supp. 786, 791 (C.D.Cal.1987) (declining to extend intracorporate immunity to context of § 1985).

■ Here it is alleged that the Municipal defendants conspired to develop and approve a budget reduction plan which eliminated plaintiffs' positions. Regardless of the motive or intent supporting the legislation, these are acts within the scope of their official duties. Therefore, the § 1985 claims against the Municipal defendants in their individual capacities must be dismissed, as a matter of law, as the allegation that their acts in furtherance of the conspiracy were solely within the scope of their duties as officials or employees of the Town. *See*

*Davidson,* 555 F.Supp. at 79–80 (employees and agents cannot independently conspire with principal where allegation that defendants acted in official capacity only).

The intracorporate immunity doctrine is similar to the rationale under which the Municipal defendants are entitled to assert legislative immunity under a § 1983 claim. The basis thereof is that the acts by these defendants which allegedly infringed the plaintiffs constitutionally protected rights, are within the scope of their official duties. Some courts have simply applied the doctrine of official legislative immunity to individual capacity claims against local legislators under 42 U.S.C. § 1985. *See e.g., Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983); *City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1256–57 (5th Cir.1976); *Rabkin v. Dean,* 856 F.Supp. 543, 551 (N.D.Cal.1994). In *Tenney v. Brandhove,* 341 U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed. 1019 (1951), the Supreme Court held that legislative immunity applied to individual state legislators for acts "in a field where legislators traditionally have power to act" for a claim under both 42 U.S.C. §§ 1983, 1985(3). However, the extension of the doctrine of official legislative immunity to local legislators has explicitly been drawn in the context of § 1983 only. *See Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 72 (2d Cir.1992). Although legislative immunity may be properly applied to the individual Municipal defendants for the claims under § 1985, this Court does not rely on that rationale.

■ Notwithstanding the dismissal of the § 1985(3) individual capacity claims against the Municipal defendants, the allegations that the officials and employees of the Town, as representatives of the Town (official capacity claims), conspired with Nehrich and Friends to develop and enact a policy which officially deprived plaintiffs of their first amendment rights, does sufficiently allege a § 1985(3) cause of action against the Town. *See Edmonds v. Dillin,* 485 F.Supp. 722, 729 (N.D.Ohio 1980) (municipality may be liable

under § 1985 as an entity if engaged in conspiracy through policy or custom). Here the plaintiffs allege that the Town infringed their constitutional right of association via enactment of the legislated policy of elimination of their positions based on their political affiliation and activity. (Compl. ¶ 119.)

### 2. Nehrich and the CSEA

■ As to Nehrich, the plaintiffs allege that he provided the Town officials with the information about which Town employees were active in the Republican party. (Compl. ¶¶ 59–60.) Plaintiffs further allege that Nehrich personally met with these officials to select which positions would be eliminated based upon the political activities of the individual holding that position. (Compl. ¶ 61.) It is important to note that the intracorporate immunity doctrine does not apply to Nehrich although plaintiffs state that Nehrich is an employee of the Town. (Compl. at ¶ 25.) None of the allegations regarding Nehrich pertain to his duties as an employee of the Town. For example, Nehrich's alleged presence at the policy meetings had no relation to his duties as an employee of the Town. This is unlike Middlemark, Biamonte, and Nedelka, all of whom were policymaking officials whose presence at a meeting to develop a proposed budget plan would be within the normal course of their duties as Town employees. Therefore, plaintiffs adequately allege Nehrich's involvement, as an individual, in a conspiracy with the Town under § 1985.

■ However, with respect to the claim against Nehrich as president of the CSEA local, there is no allegation whatsoever which indicates a basis to assert that Nehrich's involvement in this alleged conspiracy was done in his official capacity as a representative of the CSEA. See Scott, 463 U.S. at 829, 103 S.Ct. at 3356 (requirement of act in furtherance of conspiracy). Nothing in the allegations against Nehrich indicate that his acts were done in furtherance of a policy of the CSEA or with the approval of the CSEA. In essence, the alleged acts by Nehrich are *ultra vires* to his official duties as collective bargaining representative of the civil service employees of the Town of North Hempstead.

The claim against the CSEA is therefore dismissed with leave to replead.

### 3. Friends of Ben Zwirn and Peckelis

■ With respect to the § 1985 claim against Friends and Peckelis the plaintiffs fail to allege any affirmative act in furtherance of this alleged conspiracy which would support the claim. Although the plaintiffs allege that Friends, by Peckelis, was a "repository of campaign support" (Compl. at ¶ 89), the Court finds in this statement nothing more than a description of the legitimate fundamental purpose of this election campaign committee. This conclusory statement does not suffice as an affirmative act, nor is there any allegation of a causal connection between this function of Friends and the furtherance of the alleged conspiracy. Therefore, the § 1985 against Friends and Peckelis are dismissed with prejudice. See Scott, 463 U.S. at 829, 103 S.Ct. at 3356 (requirement of act in furtherance of conspiracy).

Therefore, the § 1985(3) conspiracy claim of the sixth count of the complaint is sustained against the Town of North Hempstead and Nehrich, in his individual capacity. The § 1985(3) claim against all other defendants is dismissed with prejudice except that the plaintiffs are granted leave to replead against the proper CSEA entity. The Court notes that at this stage, the remaining conspiracy Civil Rights claims under 42 U.S.C. §§ 1983 and 1985(3) are duplicative with respect to the defendants named and the underlying constitutional violations. Although the Court makes no ruling at this time, should discovery reveal no distinction between the claims, it may be appropriate to dismiss or withdraw one of the claims. See Ferran v. Town of Nassau, 11 F.3d 21, 23 (2d Cir.1993), cert. denied, —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994); Marroni v. Sykes, 1992 WL 151744 at *3 (E.D.Pa.1992).

### III. RICO CAUSES OF ACTION

The plaintiffs allege three distinct RICO causes of action, under 18 U.S.C. § 1962(b), (c) and (d), based upon predicate acts involving mail fraud under 18 U.S.C. § 1341 (Compl. at ¶ 95) and wire fraud under 18

U.S.C. § 1343 (Compl. at ¶ 100). The plaintiffs also assert acts of extortion and conspiracy. The first cause of action of the complaint alleges an enterprise under 18 U.S.C. § 1962(d) for the purpose of

> undermining and weakening the Republican Party in the TOWN, by terminating through illegal means, TOWN employees who are active Republican Party members solely because of their political affiliation and in coercing and intimidating Republican TOWN employees into disavowing their loyalties or participation in Republican political matters.

(Compl. at ¶ 75.) The second cause of action alleges an enterprise under 18 U.S.C. § 1962(b) for the purpose of "acquir[ing] dominant interest and control of the TOWN." (Compl. at ¶ 105.) The third RICO cause of action conclusorily alleges under 18 U.S.C. § 1962(c) that the defendants all conducted an enterprise which engaged in a pattern of racketeering activity. (Compl. at ¶ 108.)

 A civil RICO plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). With regard to the pattern element of racketeering activity, the Supreme Court held that in enacting RICO, Congress was concerned with "long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989). Thus in establishing a pattern, as a threshold issue, the plaintiff must allege a relationship between the predicates, *and* that the predicates amount to or pose a threat of continued criminal activity. *Id.* at 239, 109 S.Ct. at 2900 (emphasis in original). The Court finds that the plaintiffs' RICO causes of action must be dismissed in that the complaint fails to adequately allege a RICO enterprise. In addition, the RICO counts fail to adequately allege the pattern requirement of continuing criminal activity.

### A. MUNICIPALITY AS AN "ENTERPRISE"

Plaintiffs allege that the "enterprise" comprised the Town, members of the Town board, and other Town employees. (Compl. at ¶ 75.) The complaint also conclusorily states that all other defendants are "associated-in-fact." (Compl. at ¶ 74.) The Municipal defendants move to dismiss the RICO claims against the Town asserting that it is incapable of forming the criminal intent essential to the predicate acts. (Mun.Def.Mem. of Law at 13–14.) This Court finds the defendants' position persuasive and thus dismisses the RICO causes of action against the Town and the Town employees in their official capacities.

 Municipal entities may not be held civilly liable under RICO. *See Nu–Life Constr. Corp. v. Board of Educ.,* 779 F.Supp. 248, 251 (E.D.N.Y.1991).[7] The predicate acts which must constitute a pattern, as set forth in 18 U.S.C. § 1961(1), all require criminal intent on the part of the person accused of committing them; the plaintiff necessarily bears the burden of showing that the defendant possessed the requisite *mens rea. Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285; *Nu–Life,* 779 F.Supp. at 251. A municipality is incapable of forming the criminal intent necessary to establish the underlying predicate acts and thus may not be held liable under civil RICO. *Nu–Life,* 779 F.Supp. at 251 (municipal entity incapable of forming criminal intent) (*citing In re Citisource, Inc. Sec. Litig.,* 694 F.Supp. 1069, 1079 (S.D.N.Y. 1988)); *O & K Trojan, Inc. v. Municipal & Contractors Equip. Corp.,* 751 F.Supp. 431, 434 (S.D.N.Y.1990) (same); *North Star Contracting Corp. v. Long Island R.R. Co.,* 723 F.Supp. 902, 908 (E.D.N.Y.1989) (same); *see also Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 404 (9th Cir.1991) (government entities incapable of forming malicious intent), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *Dammon v. Folse,* 846 F.Supp. 36 (E.D.La.1994); *County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275 (E.D.Mich.1992); *Bonsall Village, Inc. v. Patterson,* 1990 WL 139383 (E.D.Pa.1990); *Albanese v. City Federal Savings & Loan*

---

7. The *Nu–Life* case was appealed in *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335 (2d Cir. 1994). However, this issue was not presented to the court on appeal. 28 F.3d at 1339.

*Ass'n,* 710 F.Supp. 563, 568–69 (D.N.J.1989).[8]

Moreover, *mens rea* on the part of the agents of the municipality may not be imputed to the municipality through the doctrine of *respondeat superior. See Landry v. Air Line Pilots Ass'n Intern. AFL–CIO,* 901 F.2d 404, 425 (5th Cir.); *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Nu–Life,* 779 F.Supp. at 251; *In re Citisource,* 694 F.Supp. at 1080. Therefore, since the municipality cannot be held liable for the acts of its agents, the Town employees, in their official capacity, cannot be held liable under RICO. *See Hafer v. Melo,* 502 U.S. 21, 23–25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (suit against state official in official capacity should be treated as suit against state); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985) (official capacity claim is claim against the office, not the individual). As a result the RICO claims against the Municipal defendants in their official capacities must also be dismissed.

Although this Court need not reach the issue, other courts have dismissed similar claims upon the ground that the mandatory treble damages provisions of RICO cannot properly be imposed upon municipalities. *See Genty v. Resolution Trust Corp.,* 937 F.2d 899, 910 (3d Cir.1991); *Dammon v. Folse,* 846 F.Supp. 36, 38–39 (E.D.La.1994); *Massey v. City of Oklahoma City,* 643 F.Supp. 81 (W.D.Okla.1986). However, as noted by Judge Spatt in *Nu–Life,* 779 F.Supp. at 252, a determination on this alternate ground requires an authoritative resolution of the question of whether civil RICO treble damages are "punitive" "remedial" or both, in nature. Such analysis is neither necessary nor required here.

### B. INDIVIDUAL CAPACITY IMMUNITY

The RICO causes of action are based upon the acts of these governmental officials which impacted the plaintiffs. Therefore the RICO claim rests upon the question of whether the enterprise concept can be sustained against the Town employees in their individual capacities. The Municipal defendants cite to *Thillens, Inc. v. Community Currency Exch. Ass'n of Illinois, Inc.,* 729 F.2d 1128, 1131 (7th Cir.), *cert. dismissed,* 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 342 (1984), for the proposition that they are entitled to legislative immunity with respect to the RICO claims. (Mun.Defs.Mem. of Law at 21.) The assertion of immunity defenses by government officials in the context of civil RICO is unique, because it is rare that such officers are named individually as defendants in RICO actions.

In *Thillens,* state legislators were accused of improperly enacting regulations as part of a corrupt conspiracy to injure the plaintiff's business. 729 F.2d at 1129. The plaintiff brought suit under RICO, 42 U.S.C. § 1983, anti-trust provisions, and common-law tort. *Id.* Although the defendants included state legislators, the *Thillens* court relied upon the defendant's common-law legislative immunity because the allegations were directed at the official's legitimate legislative functions. *Id.* This Court acknowledges that the *Thillens* defendants were *state* legislators, entitled to assert sovereign immunity under the 11th Amendment, unlike local or municipal legislators, whose only immunity defenses are extensions of the common-law doctrine of official immunity. Nevertheless, the *Thillens* court relied solely on the defendants' right to common-law based official (legislative) immunity, and did not rely on the defendants' 11th Amendment sovereign immunity. *Id.* The *Thillens* court dismissed all causes of action, including the civil RICO action, against the legislators. The court stated:

> Establishing the defendants' role in the conspiracy naturally would require investigation into activities cloaked with immunity, including study of staff activities and motivations for acts of the defendants and

---

8. The Second Circuit has not directly addressed this issue in either *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1339 (2d Cir.1994), or in *Cullen v. Margiotta,* 811 F.2d 698 (2d Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). In *Cullen,* the Court of Appeals did not address dismissal of the civil RICO action against Nassau County and the Town of Hempstead, to the extent that such dismissal was based on the view that a municipality may not be held liable under RICO.

their staffs geared toward enacting the challenged laws. Official immunity was designed to prevent a plaintiff from using a civil action to peer so deeply into the legislative process.

729 F.2d at 1131.

Plaintiffs' complaint also alleges wrongdoing directly involving purely legislative functions. As part of the general fact basis of the complaint, the plaintiffs assert that the defendants

scheme and conspiracy to defraud was implemented under the guise of large-scale budget cuts and a desire to downsize government, when, in fact, said intention was false and fraudulent and served as a means to camouflage the true intentions of defendants which was to eliminate TOWN employees who they felt were previously employed under Republican administrations, and who were active members of the Republican Party ...

(Compl. ¶ 45.)

That said conduct on behalf of the defendants ... was done so without regard to the effect said terminations would have on the continued operation of the services in the TOWN and without regard to the impact it would have on the long-term economic condition of the TOWN by virtue of the additional cost as a result of the separation of these employees of the TOWN ...

(Compl. ¶ 54.)

That all of said defendants participated in secret meetings by and among one another for the purpose of conspiring to defraud the said plaintiffs and in general, members of the public into believing that there existed a fiscal crisis in the TOWN as the ostensible reason for terminating in large scale numbers TOWN employees who were active members of the Republican Party.

(Compl. ¶ 86.)

That the TOWN served as the vehicle by which defendant, ZWIRN, and the other defendants named herein were able to carry out and implement their plan and

scheme under the guise of lawful governmental action ...

(Compl. ¶ 88.)

In addition, the pleadings which specify RICO predicate acts directly implicate the defendants' official functions. For example,

That it was part of the pattern of racketeering activity that between June, 1991, and June, 1992, that the defendants and their "co-conspirators" and agents unlawfully, wilfully and knowingly devised and intended to devise a scheme and artifice to terminate TOWN employees ... [u]nder the guise of TOWN-wide fiscal crisis ...

(Compl. ¶ 91.)

That from in or about December, 1991 through May, 1992, defendants and their co-conspirators and agents unlawfully ... for purposes of executing ... the scheme and artifice fraud ... insofar as camouflaging their true intentions to terminate TOWN employees who were active Republicans under the guise of economic crisis and hardship did place ... and did cause to be delivered by mail [reports notifying the civil service commission of the terminations]

(Compl. ¶ 95.) The plaintiffs' charges thus broadly implicate the defendants' acts committed within the legislative process regarding a legitimate legislative issue. *See Thillens,* 729 F.2d at 1131.

As discussed above in the context of 42 U.S.C. § 1983, the common-law doctrine of legislative immunity has been extended to regional legislators, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and municipal legislators. *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 72 (2d Cir.1992) (collecting cases). This Court finds that the common-law doctrine of legislative immunity must extend to the unusual situation presented here, as in *Thillens,* where the acts which form the basis of the RICO cause of action are the very same acts which are clearly within the otherwise protected sphere of legitimate legislative activity, even if such acts had an improper purpose or motive. The theoretical basis of decisions which have extended the common-law doc-

trine of legislative immunity to immunize government officials from suit under 42 U.S.C. § 1983 tend to support this conclusion. For example, in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) the Court stated

> The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in *Fletcher v. Peck*, 6 Cranch 87, 130 [3 L.Ed. 162 (1810)], that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned.

341 U.S. at 377, 71 S.Ct. at 788 (Frankfurter, J.); *see also Forrester v. White*, 484 U.S. 219, 223, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (threat of civil liability may inhibit officials in proper performance of their duties); *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 731–34, 100 S.Ct. 1967, 1974–76, 64 L.Ed.2d 641 (1980) (emphasizing analogy of common-law immunity applicable to state legislators, to Speech or Debate Clause immunity afforded to federal legislators); *Star Distrib., Ltd. v. Marino*, 613 F.2d 4 (2d Cir.1980) (official immunity applies to civil damage and injunctive suits); *cf. United States v. Johnson*, 383 U.S. 169, 176–77, 86 S.Ct. 749, 753, 15 L.Ed.2d 681 (conspiracy theory under 18 U.S.C. §§ 281 & 371, fails under Speech or Debate Clause immunity where proof of motivations and lack of good faith required). This Court finds that the rationale supporting the common law doctrine of legislative immunity in § 1983 suits is equally applicable in the context of a civil RICO action against legislators where the exercise of their official duties is at issue.

Plaintiffs' reliance upon *Massey v. City of Oklahoma City*, 643 F.Supp. 81 (W.D.Okla. 1986), is misplaced. In *Massey*, a former city police officer brought suit against a municipal corporation, its chief, assistant chief of police, and others, under 42 U.S.C. §§ 1983, 1985, and 18 U.S.C. § 1964. The court dismissed the RICO actions against the city on the grounds that a governmental entity is not liable under civil RICO, yet sustained the RICO causes of action individually against the chief and assistant chief.[9] 643 F.Supp. at 84. The distinction in the context of *Massey* to the instant case is instructive and fails to support the plaintiffs' position. In holding that the municipal entity could not be held liable under RICO, the court stated that "if the officers and policymakers of a municipality are engaging in the type of activity that would render them liable to treble damages under the RICO statutes, they may be sued individually and treble damages may be recovered against them." *Id.* at 86–87. However, the chief of police and assistant chief of police of Oklahoma City are not legislators or

---

**9.** Ironically, the discussion in *Massey* supports the defendants' contention that the Town may not be held liable under civil RICO, although this Court does not rely on the same rationale for the proposition. The *Massey* case was an early decision which held that a municipality is not a "person" under RICO, and thus concluded that a municipality is incapable of forming the requisite criminal intent for predicate acts of racketeering. 643 F.Supp. at 85. The court noted that municipal corporations are created by the legislature, which controls the municipality's powers. *Id.* As stated in *Massey*:

> This court is aware of no act of the Oklahoma Legislature that granted municipal corporations within this State the power to engage in any kind of activity that could be deemed racketeering. Without power conferred by the leg-

islature, it does not have the capacity to engage in this type of activity and cannot be found to have violated the predicate offenses of § 1962. If its officials did so, their actions were necessarily *ultra vires*.

*Id.* Additionally, the *Massey* court held that public policy demands that a municipality cannot be liable for treble damages under § 1964(c). *Id.* Relying upon *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), which held that punitive damages could not be assessed against a municipality, the *Massey* court noted that it would be "unjust to hold a municipal corporation liable for [treble] damages because payment of the award would be made by the innocent taxpayers of the municipality." 643 F.Supp. at 86.

legislative aides, unlike the members of the Board of the Town of North Hempstead and their staff. In addition, the *Massey* court was not presented with the question of whether the individuals were entitled to even qualified immunity.

Thus, the RICO causes of action against the Town of North Hempstead, the Town Board members, and other Town employees (except Nehrich), in their official and individual capacities must be dismissed. As a RICO cause of action cannot be properly alleged against these defendants, and the other defendants are merely alleged to be associated-in-fact, the enterprise fails and the RICO causes of action must be dismissed. This Court holds that it appears beyond a doubt that the plaintiffs can prove no set of facts in support of a RICO claim which would entitle them to relief. *See Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

## C. RICO PATTERN

Even if the plaintiffs were able to sustain a RICO cause of action against a proper enterprise, the complaint fails to allege a "pattern of racketeering activity." Although civil RICO liability requires a showing that the defendant committed a minimum of two predicate acts, establishing a pattern of racketeering activity requires something "beyond simply the number of predicate acts involved." *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2900. The *H.J. Inc.* Court explained: "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original). Moreover the Court emphasized that "relatedness" of the racketeering activity was, alone, insufficient to satisfy the pattern requirement. *Id.* at 240, 109 S.Ct. at 2901. A plaintiff must show continuity, or the threat of continuity of the racketeering activity. *Id.* at 241, 109 S.Ct. at 2902. On a motion to dismiss a RICO cause

of action under Rule 12(b)(6), with respect to continuity,

> [w]hat is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic.

*Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.1989); *see also, United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. 1114, 1140 (E.D.N.Y.1992).

The Supreme Court described continuity as "both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* at 241, 109 S.Ct. at 2902. With respect to a closed-ended continuity, the Court in *H.J. Inc.* stated:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* at 242, 109 S.Ct. at 2902. With reference to open-ended continuity the court noted

> [o]ften a RICO action will be brought before continuity can be established [by alleging predicate acts extending over a substantial period of time]. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* (emphasis in original). The Court in *H.J. Inc.* explained that the continuity requirement can be met where the predicate acts establish either explicitly, "a specific threat of repetition extending indefinitely into the future," or implicitly, by "showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902.

The Municipal defendants assert that the alleged period of the predicate acts is too brief to constitute closed-ended continuity. (Mun.Defs.Mem. of Law at 6–7.) Plaintiffs assert that the RICO allegations suffice for either closed, or open-ended continuity.

(Pls.Mem. in Opp'n at 8–11.) The Court finds that the plaintiffs' RICO claims insufficiently state either closed or open-ended continuity.

### 1. Closed–End Continuity

■ In support of their position that the complaint adequately alleges "closed-end" continuity, the plaintiffs conclusorily assert that the enterprise acted "from in or about mid–1991 through in or about June, 1992." (Compl. at ¶¶ 78, 91, 100, 101.) This is the broadest period alleged. Allegations of predicate acts contained within a period of one-year or more often fail to establish closed-ended continuity. *See F.N. Wolf & Co. v. Estate of Neal,* Fed.Sec.L.Rep. (CCH) ¶ 95,-805 at 98,875, 1991 WL 34186 (S.D.N.Y.1991) (one year insufficient to satisfy closed-ended continuity); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579 (S.D.N.Y. 1989) (thirteen months insufficient). Moreover, a review of the predicate acts alleged within this time period, indicate that the plaintiffs fail to satisfy the requirement of alleging a pattern of long-term criminal conduct by the RICO enterprise.

### a. Wire Fraud

■ The sum of plaintiffs' allegation of wire-fraud is: "said defendants had telephone conversations respecting the illegal terminations of TOWN employees from the middle of 1991 to the latter portion of 1991 ..." (Compl. ¶ 62), in addition to one other conclusory reference to wire fraud from "June, 1991 to June, 1992." (Compl. ¶ 100.) Even assuming that the plaintiffs' time frame is true, wire and mail fraud allegations must still satisfy the Federal Rule 9(b) specificity requirement. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 (2d Cir. 1990). The plaintiffs' wire fraud allegations completely fail to meet the pleading specificity requirement of FRCP 9(b) as they contain no statement of the contents of the communications, who was involved, where and when they took place or explain the facts of the fraud. *See Mills v. Polar Molecular Corp.,*

12 F.3d 1170, 1176 (2d Cir.1993). Therefore plaintiffs' wire-fraud allegations fail to support either a closed-end or open-ended continuity pattern or of any predicate act whatsoever.

### b. Extortion

■ Similarly the complaint fails to properly allege extortion under the Hobbs Act, 18 U.S.C. § 1951, as a predicate act.[10] The plaintiffs' allegation as to Hobbs Act extortion is wholly devoid of any pleaded facts which give an indication of the vaguest sort as to when the alleged extortion demands occurred, who made them or to whom they were made. (Compl. ¶ 101.) Pleadings which fail to indicate the persons, dates and methods of extortion, and merely parrot the statutory language are plainly inadequate to support a civil RICO predicate act. *Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986); *see also Morin v. Trupin,* 747 F.Supp. 1051, 1065–66 (S.D.N.Y. 1990) (notice pleading of predicate acts requires sufficient specificity to permit a defendant to discern whether he is being charged with primary conduct or as a aider and abettor, and some idea of the manner in which charged with primary conduct). Thus the plaintiffs' Hobbs Act allegation is inadequate as a predicate act and thus fails to support the establishment of a closed ended long-term racketeering activity.

### c. Mail Fraud

■ Therefore the remaining alleged predicate act which may support plaintiffs' RICO claims involves the claimed mail fraud. Plaintiffs allege ten (10) acts of mail fraud, all occurring within a four month period of December 12, 1991 to April, 1992. (Compl. at ¶ 95.) Seven of the ten acts occurred on one date, January 28, 1992. (*Id.*) Most significantly however, the complaint sets forth that only *one* of the alleged acts of mail fraud was directed through the mails to a plaintiff; the remaining nine alleged acts comprise eight reports and one letter which were sent to the Nassau Civil Service Commission, a non-par-

---

**10.** The Court notes that all allegations of extortion except one (Compl. ¶ 101) are merely incorporated by reference into the pattern of RICO predicate acts, and additionally they do not indicate they are under the Hobbs Act, 18 U.S.C. § 1951. (*See* Compl. at ¶¶ 44, 47, 69, 70.)

ty. (*Id.*) This Court holds that the ten predicate acts within a fixed four month period without an indication of a threat of such acts in the future, does not demonstrate long term criminal conduct. Therefore, the mail fraud allegations fail to support plaintiffs' closed end continuity assertion. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902 ("[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement").

### 2. Open–Ended Continuity

 If plaintiffs fail to allege closed-ended continuity, to maintain their RICO claims the complaint must suggest open-ended continuity. *See H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. at 2902; *Barsam v. Pure Tech Intern., Inc.*, 864 F.Supp. 1440, 1451 (S.D.N.Y.1994); *Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1044 (S.D.N.Y.1993). The plaintiff must sufficiently allege a "distinct threat of long-term racketeering activity, either implicit or explicit," which may be inferred from the nature of the enterprise if it existed for criminal purposes or that the predicate acts are part of the defendants' regular way of doing business. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902; *see also Barsam*, 864 F.Supp. at 1451. The complaint alleges that the enterprise is the Town, its employees and agents and other defendants associated-in-fact. (Compl. ¶ 75.) Even assuming the allegations to be true, this Court finds that this is not an enterprise that is a "long-term association that exists for criminal purposes." *H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902. Nor does the complaint succeed in alleging any facts from which it may be inferred that the Town and its employees normally do business by means of fraud or extortion. Most significant, is the failure of the complaint to allege facts that might establish the threat of continued racketeering activity. *See H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.

Plaintiffs argue that the complaint satisfies the open-ended concept of continuity, as an explicit threat of continuing activity. They assert that the defendants' scheme continues to cause many employees of the Town to

disavow affiliation with the Republican Party. (Compl. at ¶ 72; Pls.Mem. in Opp'n. at 11.) However such as claim fails to establish the threat of continuing criminal conduct because the concept refers to "past conduct, that by its nature projects into the future with a threat of repetition." *H.J. Inc.* at 241, 109 S.Ct. at 2902. In other words, the past criminal conduct must give an indication of future or continuing criminal conduct, not future repercussions. Nothing in the complaint suggests that future acts of mail fraud, wire fraud, conspiracy or extortion will take place. The plaintiffs seek relief from the elimination of their jobs and this act is complete. Even if the act of dismissing the plaintiffs could in some manner be considered a predicate act, the Court notes that ten of the thirteen plaintiffs were discharged on one day, December 31, 1991; the remaining three plaintiffs were discharged between January 9, 1992, and April 10, 1992. (Compl. ¶¶ 5–17.) Nothing in the complaint indicates the possibility of future "predicate dismissals."

Based on the foregoing, the Court holds that the complaint fails to establish a threat that the "racketeering" activity will continue into the future, because "the alleged predicate acts do not inherently require further criminal activity, and the complaint does not raise an inference that the prohibited conduct is a method of doing business regularly employed by Defendants." *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 234 (S.D.N.Y.1992). Mere speculation will not suffice; the "threat of continuity" must appear likely. *Id.* "The absence of continuity or its threat is fatal to the RICO claim." *Lou v. Belzberg*, 728 F.Supp. 1010, 1027 (S.D.N.Y.1990). Plaintiffs' RICO allegations fail, on the whole, to allege facts from which it could be inferred that the acts of "racketeering" were more than an isolated event. *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.1989). Plaintiffs' RICO claims, counts one, two, and three of the complaint, are therefore dismissed in all respects.

### IV. COMMON LAW FRAUD CLAIMS

The defendants move to dismiss the common-law fraud cause of action for failure to

meet the Federal Rule of Civil Procedure 9(b) pleading requirement, and for failure to plead detrimental reliance by any of the plaintiffs, or injury caused by any reliance. (Mun.Defs.Mem.Law at 20; Friends Mem. Law at 9.) Plaintiffs argue that they have sufficiently stated facts to allow the defendants to prepare a response and that "much of the detail respecting the fraud is peculiarly within the knowledge and control of the defendants." (Pls.Mem. in Opp'n at 4–5.)

▋ Allegations of fraud must satisfy the particularity requirement of Rule 9(b). A fraud pleading must allege the essential elements of material misrepresentation, knowledge of falsity, intent to defraud, reasonable reliance, and injury. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992) (citing *Katara v. D.E. Jones Commodities Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987); *see also Browning Ave. Realty Corp. v. Rubin*, 207 A.D.2d 263, 615 N.Y.S.2d 360, 363 (1994). The circumstances constituting the fraud must be stated with particularity. Fed.R.Civ.P. 9(b). However, malice, intent, knowledge, and other conditions of the mind may be plead generally. *Id.* Therefore the complaint must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Certilman v. Hardcastle, Ltd.*, 754 F.Supp. 974, 978 (E.D.N.Y.1991) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990). The complaint must also specify each defendant's alleged participation in the fraud. *Certilman*, 754 F.Supp. at 978 (quoting *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

▋ The common law fraud cause of action must be dismissed with leave to replead for failure to satisfy the requirements of Rule 9(b). The complaint alleges that the plaintiffs were defrauded by the reason given for the elimination of their positions. The complaint asserts that the defendants reason for the elimination of the positions, a townwide fiscal crisis, is false. (Compl. ¶¶ 2, 63.) The complaint further alleges that the defendants knew that such representation was false because the defendants subsequently rehired Democrats to fill positions previously held by terminated Republicans. (Compl. ¶ 53.)

However, plaintiffs allegations of fraud are presented in such a "shotgun" fashion, that no reasonable person can piece together the allegations which plaintiffs intend to pursue. Accordingly, plaintiffs, if they be so advised, may replead the seventh cause of action by specifically delineating what paragraphs of the complaint should be considered as containing allegations of fraud. However, the plaintiffs are reminded of their obligation under Federal Rule 11, particularly where it appears that claims are made that persons other than the plaintiffs were hired to fill the positions which were eliminated.

## V. MOTION TO DISMISS PLAINTIFF BECKER'S CLAIMS

▋ Defendants move to dismiss all claims on behalf of plaintiff Rhoda Becker, former Commissioner of Planning and Research Development for the Town of North Hempstead. (Mun.Def.Mem. of Law at 22.) Defendants rely on *Regan v. Boogertman*, 984 F.2d 577 (2d Cir.1993) and *Savage v. Gorski*, 850 F.2d 64 (2d Cir.1988), for the proposition that political affiliation is an appropriate basis for an employment determination with respect to Becker because her position was that of a "policymaker" and not afforded civil service protection. (Mun. Defs.Mem. of Law at 22.) The plaintiffs assert that Becker's political affiliation had no bearing on the performance of her duties. (Pls.Mem. in Opp'n at 25.) Moreover, plaintiffs assert that whether political affiliation was an appropriate employment requirement is a question of fact. (*Id.* at 26.)

The Supreme Court has held that it is acceptable to make political loyalty a requirement in policy-making positions:

representative government [should] not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate.... Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end.

*Elrod v. Burns*, 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976). This con-

cept was later refined in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), which indicated that not all "policymakers" are exempt from patronage employment actions. In determining which positions may appropriately be considered in this light, the Court stated,

> the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved.

*Id.* at 518, 100 S.Ct. at 1295. Moreover the courts of the Second Circuit have required scrutiny of the functions of the position to determine if there is a "rational connection between shared ideology and job performance." *Regan,* 984 F.2d at 580 (*citing Savage,* 850 F.2d at 68).

The position of Commissioner of Planning and Research Development is by appointment of the Town Board. North Hempstead Town Code § 23–7.2(A). The appointment is based upon "administrative experience and qualifications for the duties of such office and such additional standards as may be required by the Town Board." *Id.* Defendants analogize Ms. Becker's former job to a cabinet position. (Mun.Defs.Mem. of Law at 23.)

It is not dispositive of this issue that Becker's position was not afforded civil service protection, and defined "policymaker" by the defendants. *Regan,* 984 F.2d at 580. Other factors must also be taken into consideration, such as technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials and responsiveness to partisan politics and political leaders. *Id.* (citing *Ecker v. Cohalan,* 542 F.Supp. 896, 901 (E.D.N.Y.1982)). Therefore, the issue of whether Becker's position is considered "policymaking" and thus subject to patronage based employment termination cannot be determined on a motion to dismiss. The defendants' motion to dismiss all remaining causes of action with respect to plaintiff Becker is denied, with leave to the defendants to move pursuant to Rule 56 upon the conclusion of discovery regarding the above outlined criteria.

## CONCLUSION

The defendants' motion to dismiss is granted in part and denied in part.

The RICO claims set forth in counts one, two, and three of the complaint are dismissed with prejudice.

The civil rights claims under 42 U.S.C. § 1983, set forth in count three, is sustained against the defendant Town of North Hempstead and the defendant Nehrich as an individual, and dismissed as to all other defendants. However, the plaintiffs are granted leave to replead such cause of action against the proper CSEA entity. The § 1983 claims set forth in count five of the complaint are dismissed with prejudice.

The civil rights claim under 42 U.S.C. § 1985(3), set forth in count six of the complaint, is sustained at this time against the defendant Town of North Hempstead and the defendant Nehrich individually, and dismissed as to all other defendants. However, the plaintiffs are granted leave to replead such cause of action against the proper CSEA entity.

The common law fraud cause of action set forth in count seven of the complaint is dismissed with leave to replead.

The defendants' motion dismiss the remaining civil rights claims of plaintiff Becker is denied. The plaintiffs shall file and serve the amended complaint within twenty (20) days from the date of this order.

**SO ORDERED.**